LEVINE, J.
 

 This appeal presents the question of whether a statute that limits the non-economic damages of a plaintiff can be applied retroactively. We find in this particular case, the new statute cannot be utilized to retroactively limit non-economic damages, and therefore we reverse.
 

 In April, 2003, Harvey Raphael suffered a heart attack and was treated in an emergency room. Dr. James Shecter treated Raphael and did not administer anti-clotting drugs at that time. A different doctor administered this particular drug more than an hour later. Evidence was presented at trial that the delay in administering this drug resulted in significant damage to Raphael’s heart. In 2005, Raphael filed a negligence action against Dr. Shecter, Dr. Shecter’s employer, and the hospital. The appellant died following an unsuccessful heart transplant in 2006.
 

 At the time of the incident, this medical malpractice action was governed by section 766.209(2), Florida Statutes (2002), which stated that “[i]f neither party requests or agrees to voluntary binding arbitration, the claim shall proceed to trial or to any available legal alternative such as offer of and demand for judgment under s. 768.79 or offer of settlement under s. 45.061.” The statute went on to further state that the claim shall proceed to trial “without limitations on damages” if the defendant refuses a claimant’s offer of voluntary binding arbitration under section 766.209(3) and the limitation of non-economic damages would be set at $350,000 if the claimant rejects the defendant’s offer to enter voluntary binding arbitration pursuant to section 766.209(4). In this case, neither party offered to arbitrate, so section 766.209(2) would have applied.
 
 [1]
 

 
 *1155
 
 After a jury trial, there was a jury verdict awarding the appellant $9.5 million in non-economic damages. Then appellee moved to limit the non-economic damages to $150,000 per claimant pursuant to section 766.118(4), Florida Statutes (2003),
 
 [2]
 
 and the trial court granted the motion.
 

 Section 766.118, which placed limits on non-economic damages in medical malpractice cases, was adopted after the incident of malpractice in this case occurred. The notice of intent to initiate litigation
 
 [3]
 
 was sent and the suit was filed in 2005, nearly two years after this statute became effective on September 15, 2003.
 

 Throughout history, courts and legal commentators have generally looked with disapproval and extreme caution at the retroactive application of laws. “It is a fundamental principle of jurisprudence that retroactive application of new laws is usually unfair.” 2 Norman J. Singer, Statutes and Statutory Construction § 41:2, at 375 (6th ed. 2001). As the United States Supreme Court has explained,
 

 [rjetroactivity is generally disfavored in the law,
 
 Bowen v. Georgetown Univ. Hospital,
 
 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), in accordance with “fundamental notions of justice” that have been recognized throughout history,
 
 Kaiser Aluminum & Chemical Corp. v. Bonjorno,
 
 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring).... H. Broom, Legal Maxims 24 (8th ed. 1911) (“Retrospective laws are, as a rule, of questionable policy, and contrary to the general principle that legislation by which the conduct of mankind is to be regulated ought to deal with future acts, and ought not to change the character of past transactions carried on upon the faith of the then existing law”).
 

 E. Enters. v. Apfel,
 
 524 U.S. 498, 532-33, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). It is therefore well settled that retrospective laws are “generally unjust.”
 
 Id.
 
 at 533, 118 S.Ct. 2131 (quoting 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891)).
 

 In Florida, to determine whether a statute may be retroactively applied, “we consider two factors: (1) whether the statute itself expresses an intent that it apply retroactively; and, if so, (2) whether retroactive application is constitutional.”
 
 Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass’n One, Inc.,
 
 986 So.2d 1279, 1284 (Fla.2008) (citing
 
 Metro. Dade County v. Chase Fed. Hous. Corp.,
 
 737 So.2d 494, 503 (Fla.1999) (holding that where there is clear legislative intent to apply a statute retrospectively, the second inquiry
 
 *1156
 
 is whether the legislature acted within “constitutionally acceptable parameters”)).
 

 When it adopted section 766.118(4), the Florida Legislature expressly stated the following intent to apply the statute retroactively to incidents that took place prior to its enactment:
 

 It is the intent of the legislature to apply the provisions of this act to prior medical incidents, to the extent such application is not prohibited by the State Constitution or Federal Constitution, except that the changes to chapter 766, Florida Statutes, shall apply only to any medical incident for which a notice of intent to initiate litigation is mailed on or after the effective date of this act.
 

 Ch. 03-416, § 86, Laws of Fla.
 
 [4]
 

 However, the Legislature’s clear intent to modify and allow new damages retroactively is not necessarily dispositive. In
 
 State Farm Mutual Automobile Insurance Co. v. Laforet,
 
 658 So.2d 55, 61 (Fla.1995), the Legislature intended the retroactive application of a new statute for “bad faith” actions against insurers. The Supreme Court found that the legislature was within its rights to alter damages allowable under the statute prospectively. The question was whether the legislature could “modify the definition of damages retroactively to 1982 through a purported clarification of its intent.”
 
 Id.
 
 at 61.
 

 In
 
 Laforet,
 
 the Supreme Court decided that the Legislature, despite its clear intent, could not retroactively modify the definition of damages so as to alter or impair vested or substantive rights of the insurers.
 
 Id.
 
 The court reasoned that, generally, “retroactive abolition of substantive vested rights is prohibited by constitutional due process considerations.”
 
 Chase Fed.,
 
 737 So.2d at 503 (citing
 
 Rupp v. Bryant,
 
 417 So.2d 658, 665-66 (Fla.1982)).
 

 It is, therefore, well settled in Florida that,
 

 [e]ven when the Legislature does expressly state that a statute is to have retroactive application, [courts have] refused to apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties.
 

 Laforet,
 
 658 So.2d at 61;
 
 Young v. Altenhaus,
 
 472 So.2d 1152, 1154 (Fla.1985);
 
 Rupp,
 
 417 So.2d at 670;
 
 El Portal v. Miami Shores,
 
 362 So.2d 275, 277 (Fla.1978).
 

 Although a substantive statute will not operate retrospectively, the general rule is that a procedural or remedial statute may operate retrospectively.
 
 Laforet,
 
 658 So.2d at 61. Thus, whether section 766.118(4), Florida Statutes, is a change or amendment that is substantive or procedural in nature is an issue that is determinative of this case.
 

 Substantive law prescribes “duties and rights” and procedural law amendments concern “means and methods.”
 
 Alamo Rent-A-Car v. Mancusi,
 
 632 So.2d 1352, 1358 (Fla.1994). In
 
 Mancusi,
 
 the legislature limited the amount of punitive damages for causes of action arising on or after July 1, 1986, and the Legislature intended for a subsequent amendment to have an October 1, 1987, effective date. Although, the cause of action accrued in September 1986, the case was not filed until after the effective date of the change in punitive damages. “The establishment or elimination of such a claim is clearly a substantive, rather than procedural, decision of the legislature because such a deei
 
 *1157
 
 sion does, in fact, grant or eliminate a right or entitlement.”
 
 Id.
 
 at 1358. The limitation of non-economic damages in this case is no less a substantive decision than a limitation on punitive damages as demonstrated in
 
 Mancusi.
 

 This court has recently examined in detail when a law change has affected a vested or substantive right, or merely an inchoate or procedural right. “Florida law is well established that the right to sue on an inchoate cause of action- — one that has not yet accrued — is not a vested right because no one has a vested right in the common law, which the Legislature may substantively change prospectively.”
 
 Williams v. Am. Optical Corp.,
 
 985 So.2d 23, 30 (Fla. 4th DCA 2008);
 
 see also Clausell v. Hobart Corp.,
 
 515 So.2d 1275, 1275-76 (Fla.1987). The other end of the “spectrum” is a “cause of action that has evolved into a money judgment. Here the right is indeed vested and may not be abrogated by legislation.” Am.
 
 Optical Corp.,
 
 985 So.2d at 27.
 

 Our court then looked at the instances that occur in the “spectrum” between the two prior manifest situations.
 

 In these stages,
 
 an act or event has already occurred affecting a claimant
 
 and has been transformed into an accrued right to sue.
 
 Suit may not yet have been brought,
 
 on the one hand; or suit may have already been brought, on the other hand, but no outcome has been reached in any litigation. As it turns out,
 
 both of these stages involve vested, rights.
 

 Id.
 
 at 27-28 (emphasis added).
 

 In this case, the incident of medical malpractice occurred on April 10, 2003, and the claimant did not file an action for damages until after the new legislation substantively affecting this cause of action became effective, on September 15, 2003. Here, as in
 
 Mancusi,
 
 the new statute may not be retroactively applied to the cause of action which accrued previously.
 
 Id.
 
 at 28. Section 766.118(4), Florida Statutes, cannot be retroactively enforced to impair the appellant’s vested rights.
 

 The appellant’s rights vested or accrued at the same time as the cause of action. “A cause of action for the negligence of another accrues at the time the injury is first inflicted.”
 
 Dep’t of Transp. v. Soldovere,
 
 519 So.2d 616, 617 (Fla.1988). The cause of action in a medical malpractice case accrues at the time the malpractice incident occurs.
 
 [5]
 

 See
 
 § 95.11(4)(b), Fla. Stat. (2002);
 
 Patient’s Compensation
 
 
 *1158
 

 Fund v. Scherer,
 
 558 So.2d 411, 414 (Fla.1990);
 
 Altenhaus,
 
 472 So.2d at 1154.
 

 We find that the retroactive application of section 766.118(4) does not pass the test set out in
 
 Chase Federal
 
 and
 
 Old Port Cove,
 
 because it is an impairment of the substantive and vested rights of the appellant for the cause of action which accrued and vested on April 10, 2003.
 

 We, therefore, reverse and remand for further proceedings consistent with this opinion. As a result, we do not address the other issues raised by appellant.
 
 [6]
 

 We have also considered the issues raised in the cross appeal and find both to be without merit.
 

 Reversed and remanded.
 

 STEVENSON and MAY, JJ, concur.
 

 [1]
 

 . Section 766.209, Florida Statutes (2002), provided as follows:
 

 (1) A proceeding for voluntary binding arbitration is an alternative to jury trial and shall not supersede the right of any party to a jury trial.
 

 (2) If neither party requests or agrees to voluntary binding arbitration, the claim shall proceed to trial or to any available legal alternative such as offer of and demand for judgment under s. 768.79 or offer of settlement under s. 45.061.
 

 (3) If the defendant refuses a claimant’s offer of voluntary binding arbitration:
 

 (a) The claim shall proceed to trial without limitation on damages, and the claimant, upon proving medical negligence, shall be entitled to recover prejudgment interest, and reasonable attorney’s fees up to 25 percent of the award reduced to present value.
 

 [[Image here]]
 

 (4) If the claimant rejects a defendant's offer to enter voluntary binding arbitration: (a) The damages awardable at trial shall be limited to net economic damages, plus non-economic damages not to exceed $350,000 per incident. The Legislature expressly finds that such conditional limit on noneco-nomic damages is warranted by the claimant's refusal to accept arbitration, and represents an appropriate balance between the interests of all patients who ultimately pay for medical negligence losses and the interests of those patients who are injured as a result of medical negligence.
 

 [[Image here]]
 

 (5) Jury trial shall proceed in accordance with existing principles of law.
 

 [2]
 

 .
 
 Section 766.118(4), Florida Statutes (2003), specifically limited the non-economic damages for negligence of practitioners providing emergency services and care as follows:
 

 LIMITATION ON NONECONOMIC DAMAGES FOR NEGLIGENCE OF PRACTITIONERS PROVIDING EMERGENCY SERVICES AND CARE. — Notwithstanding subsections (2) and (3), with respect to a cause of action for personal injury or wrongful death arising from medical negligence of practitioners providing emergency services and care, as defined in s. 395.002(9), or providing services as provided in s. 401.265, or providing services pursuant to obligations imposed by 42 U.S.C. s. 1395dd to persons with whom the practitioner does not have a then-existing health care patient-practitioner relationship for that medical condition:
 

 (a) Regardless of the number of such practitioner defendants, noneconomic damages shall not exceed $150,000 per claimant.
 

 (b) Notwithstanding paragraph (a), the total noneconomic damages recoverable by all claimants from all such practitioners shall not exceed $300,000.
 

 [3]
 

 . Section 766.106(2)(a), Florida Statutes (2002).
 

 [4]
 

 . This statement of intent conditions this ret-roactivity on meeting State and Federal Con-stilutional scrutiny.
 

 [5]
 

 . The fact that Mr. Raphael’s personal injury action was converted into a wrongful death action when he died does not change the date on which the cause of action in this case accrued, because both causes of action accrued when the malpractice occurred. Section 95.11 (4)(b), Fla. Stat. (2002), defines both medical malpractice actions and the statutes of limitation and repose that applied in pertinent part as follows:
 

 An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued, except that this 4-year period shall not bar an action brought on behalf of a minor on or before the child’s eighth birthday. An “action for medical malpractice” is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care.... Under section 95.1 l(4)(b), whether the mal-
 

 practice results in injury or in death, the statute of limitations begins to run at the time of the occurrence of the malpractice. ”[A]c-tions for personal injury based on the wrongful or negligent act of another accrue at the time of the injury and ... the statute of limitations begins to run at the same time.”
 
 Cris-
 
 
 *1158
 

 tiani v. Sarasota,
 
 65 So.2d 878, 879 (Fla.1953). “[Wjhere an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefore, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.”
 
 Miami v. Brooks,
 
 70 So.2d 306, 308 (Fla.1954).
 

 [6]
 

 . ''[Cjourts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds.”
 
 B.C. v. Fla. Dep’t of Children & Families,
 
 887 So.2d 1046, 1055 (Fla.2004) (quoting
 
 Singletary v. State,
 
 322 So.2d 551, 552 (Fla.1975)).